**UNITED STATES of America,
Plaintiff,**

v.

**Brian Lee GOULD, Defendant.**

**Criminal No. WDQ–07–0359.**

United States District Court,
D. Maryland,
Northern Division.

Dec. 13, 2007.

Bonnie S. Greenberg, Rod J. Rosenstein, Office of the United States Attorney, Baltimore, MD, for Plaintiff.

ORDER

WILLIAM D. QUARLES, JR., District Judge.

For the reasons discussed in the accompanying Memorandum Opinion, it is, this 13th day of December 2007, ORDERED that:

1. Brian Lee Gould's motion to dismiss indictment BE, and HEREBY IS, DENIED; and

2. The Clerk of the Court shall send copies of this Memorandum Opinion and Order to counsel for the parties.

## MEMORANDUM OPINION

Pending is Brian Lee Gould's motion to dismiss his indictment. For the following reasons, Gould's motion will be denied.

## I. Background

In 1985, Gould was convicted of assault with intent to commit sodomy while armed in the District of Columbia under D.C.Code §§ 22–503 and 22–302. Indictment ¶ 1. On July 8, 2002, Gould was released from custody. *Id.* ¶ 2.

On March 5, 2004, Gould moved to West Virginia. *Id.* ¶ 3. On November 9, 2004, Gould was convicted of failing to provide information relative to his duty to register as a sex offender in West Virginia and was sentenced to 90 days in prison. *Id.* Gould moved to Pennsylvania in late 2004, and completed a Pennsylvania State Police Sexual Registration Form. *Id.* ¶ 4. Gould failed to comply with the continuing notification requirements in Pennsylvania, and on May 23, 2007, a warrant was issued for his arrest. *Id.* On August 20, 2006, Gould informed his probation officer that he was moving from Pennsylvania to Maryland, and the officer informed him that he could not leave the state. Gould then missed two meetings with his federal parole officer in Pennsylvania, and an arrest warrant was issued by the U.S. Parole Commissioner. *Id.* ¶¶ 5–6.

On November 30, 2006, Gould obtained a Maryland driver's license. On July 18, 2007, U.S. Marshals arrested Gould at his Maryland residence for the federal parole violation. On August 9, 2007, Gould was indicted in this district for failing to register as a sex offender under the Sex Of-fender Registration and Notification Act ("SORNA").[1] Indictment ¶ 9.

## II. Analysis

### A. SORNA Background and Requirements

SORNA is part of the Adam Walsh Child Protection and Safety Act of 2006, Pub.L. No. 109–248, which was enacted on July 27, 2006. SORNA requires states to maintain a database of sex offenders.[2] 42 U.S.C. § 16912 (West Supp.2007). SORNA also requires sex offenders to register and regularly update their information in the database. *Id.* § 16913. Offenders must register before completing a sentence of imprisonment, or within 3 days after being sentenced to a term that does not include confinement. *Id.* § 16913(b). Sex offenders who fail to update their information may be fined and imprisoned for up to ten years. 18 U.S.C. § 2250.

Congress did not expressly make SORNA retroactive to those convicted of sex offenses before July 27, 2006, but delegated this authority to the Attorney General. 42 U.S.C. § 16913(d). On February 28, 2007, the Department of Justice ("DOJ") promulgated an interim rule declaring SORNA retroactive to convictions predating its enactment. Applicability of the Sex Offender Registration and Notification Act, 72 Fed.Reg. 8894 (Feb. 28, 2007) (codified at 28 C.F.R. § 72 (2007)) [hereinafter Interim Order]. On May 30, 2007, DOJ issued proposed guidelines interpreting SORNA. The National Guidelines for Sex Offender Registration and Notification, 72 Fed.Reg. 30,210 (May 30, 2007) [hereinafter Proposed Guidelines]. The Office of Sex Offender Sentencing, Moni-

---

**1.** SORNA is codified at Title 42 of the U.S.Code. *See* 42 U.S.C. §§ 16901 *et seq.* (West Supp.2007). SORNA's penalty provision is located in Title 18. *See* 18 U.S.C. § 2250(a) (West Supp.2007).

**2.** A "sex offender" is "an individual who was convicted of a sex offense." 42 U.S.C. § 16911(1). A "sex offense" is "a criminal offense that has an element involving a sexual act or sexual contact with another." *Id.* § 16911(5)(A)(I).

toring, Apprehending, Registering, and Tracking (the "SMART Office") will supervise implementation of SORNA in the states. *Id.* at 30,213.

## B. Applicability of SORNA to Gould

### 1. State Implementation

Gould argues that he is not required to register under SORNA because Maryland has not yet implemented it. The Government counters that Gould had a preexisting duty to register under Maryland law, thus his indictment should not be dismissed.

▪ States have until July 27, 2009 to implement SORNA; none has done so. *See United States v. Pitts,* No. 07–157–A, 2007 WL 3353423, at \*7 (M.D.La. Nov. 7, 2007). SORNA requires sex offenders to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). An offender's registration under SORNA does not hinge on implementation in his state.

▪ Gould highlights the differences between SORNA and existing Maryland sex offender registration requirements and contends that Maryland did not have the infrastructure available for Gould to comply with SORNA.[3] Gould contends that his failure to register under Maryland law has no bearing on his failure to register under SORNA. Gould's argument is misplaced. Although the obligations imposed under SORNA differ from those under Maryland law,[4] Gould had a duty to register his name and address with the Mary-

land authorities. Maryland's failure to implement SORNA does not preclude Gould's prosecution under § 2250(a). *See* Proposed Guidelines, 72 Fed.Reg. at 30,228 ("SORNA applies to all sex offenders, including those convicted of their registration offenses prior to the enactment of SORNA or prior to particular jurisdictions' incorporation of the SORNA requirements into their programs."). Accordingly, SORNA applies to Gould.

### 2. Due Process Violation

Gould argues that it is a due process violation to punish him for failing to register under SORNA when he is unable to comply. The Government responds that Gould misreads SORNA's text, and he is properly subject to criminal liability.

Title 42 of U.S.Code § 16913(d), entitled "Initial registration of sex offenders unable to comply with subsection (b) of this section" provides:

> The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

Subsection (b) refers to the requirements of initial registration for sex offenders under SORNA. *Id.* § 16913(b). The Government cites the Attorney General's directive that SORNA applies to "all sex offenders, including sex offenders convict-

---

**3.** *Compare* 42 U.S.C. § 16914(a)(5) (offender must provide name and address of places of employment), *with* Md.Code Ann., Crim. Proc. § 11–706 (LexisNexis 2007) (offender need only provide place of employment if enrolled at higher education institution or is classified as offender required to register in another state).

**4.** For example, Maryland law does not require sex offenders to provide license plate numbers and a description of the vehicle owned or operated by the offender to law enforcement authorities. *See* Md.Code Ann., Crim. Proc. § 11–706.

ed of the offense for which registration is required prior to the enactment of. [SOR-NA]," as support for its position. *See* 28 C.F.R. § 72.3. The Government's argument is that subsection (d) only applies to those offenders who had not previously registered. The authority given to the Attorney General to decide the retroactivity of SORNA was therefore only related to those offenders who were unable to initially register. Thus, the Government maintains that Gould had a preexisting duty to keep his registration current. *See, e.g., United States v. May,* Nos. 4:07–cr–00164–JEG, 1L07:cr–00059–JEG, 2007 WL 2790388, at *4 (S.D.Iowa Sept. 24, 2007).

There is a tension between the title of subsection (d) and its text. Some courts have determined that the retroactivity determination in subsection (d) applies to all previously convicted offenders who had not initially registered under SORNA.[5] Other courts have found that the Attorney General's retroactivity determination in subsection (d) applies only in the limited situations when offenders were unable to initially register before the enactment of

SORNA.[6] Some courts have even stated that the title of subsection (d) mandates this narrow view of the Attorney General's role. *United States v. Templeton,* No. CR–06–291–M, 2007 WL 445481, at *4 (W.D.Okla. Feb. 7, 2007).

The Court agrees with the rationale of *Kapp* and other courts that the Attorney General's retroactivity determination in subsection (d) applies to all previous convictions of those eligible for registration under SORNA. The statutory text is divided into two specific clauses; the first authorizes the Attorney General to determine the applicability of SORNA to past offenders, while the second clause refers to the Attorney General's authority to promulgate rules related to SORNA registration. *Kapp,* 487 F.Supp.2d at 542. Moreover, the first clause mentions "subchapter," a reference to SORNA, not just the subsection relating to initial registration. Thus, the first clause authorized the Attorney General to determine the retroactive applicability of SORNA to all past offenders, which was exercised by the Interim Order on February 28, 2007.

---

**5.** *See, e.g., United States v. Kapp,* 487 F.Supp.2d 536, 542–43 (M.D.Pa.2007); *United States v. Muzio,* No. 4:07CR179 CDP, 2007 WL 2159462, at *5 (E.D.Mo. July 26, 2007); *United States v. Gill,* No. 2:06–cr–00725 PGC, 2007 WL 3018909, at *4 (D.Utah Oct.15, 2007); *United States v. Dillenbeck,* No. 4:07–cr–213–RBH, 2007 WL 2684838, at *3 (D.S.C. Sept. 7, 2007); *United States v. Heriot,* No. 3:07–323, 2007 WL 2199516, at *2 (D.S.C. July 27, 2007); *United States v. Barnes,* No. 07 Cr. 187, 2007 WL 2119895, at *2–3 (S.D.N.Y. July 23, 2007); *United States v. Smith,* No. 2:07–cr–00082, 528 F.Supp.2d 615, 617, 2007 WL 1725329, at *2 (S.D.W.Va. June 13, 2007); *United States v. Deese,* No. CR–07–167–L, 2007 WL 2778362, at *3 (W.D.Okla. Sept. 21, 2007); *United States v. Sallee,* No. CR–07–152–L, 2007 WL 3283739, at *1–2 (W.D.Okla. Aug. 13, 2007).

**6.** In *United States v. Roberts,* the court explained that the intent of subsection (d) was "to avoid the obvious injustice of requiring

[sex offenders convicted before July 2006] to do the impossible by registering within 3 days of their years-old convictions." No. 6:07–CR–70031, 2007 WL 2155750, at *2 (W.D.Va. July 27, 2007); *see also May,* 2007 WL 2790388, at *4; *United States v. Hinen,* 487 F.Supp.2d 747, 752–53 (W.D.Va.2007); *United States v. Ambert,* No. 4:07–CR–053–SPM, 2007 WL 2949476, at *2 (N.D.Fla. Oct. 10, 2007); *United States v. Manning,* No. 06–20055, 2007 WL 624037, at *2 (W.D.Ark. Feb. 23, 2007); *United States v. Madera,* 474 F.Supp.2d 1257, 1262 (M.D.Fla.2007); *United States v. Buxton,* No. CR–07–082–R, slip op. at 5 (W.D.Okla. Aug. 30, 2007); *United States v. Cardenas,* No. 07–80108–CR, 2007 WL 4245913, at *6 (S.D.Fla. Nov. 29, 2007); *United States v. Sawn,* No. 6:07cr00020, 2007 WL 2344980, at *1–2 (W.D.Va. Aug. 15, 2007); *United States v. Gonzales,* No. 5:07cr27–RS, 2007 WL 2298004, at *4 (N.D.Fla. Aug. 9, 2007); *United States v. Marcantonio,* No. 07–60011, 2007 WL 2230773, at *2–3 (W.D.Ark. July 31, 2007).

■ Gould's indictment charges him with failing to register from August 21, 2006 to July 18, 2007. Indictment ¶ 9. As SORNA only applied to Gould after the Interim Order, he cannot be held criminally liable for his failure to register before that date. His failure to register after February 28, 2007, however, was properly charged in the indictment.[7] Accordingly, Gould's indictment will not be dismissed on this ground.

## C. Notification

Gould contends that because he was not notified of a duty to register under SORNA, it is a due process violation to charge him with the offense. The Government counters that Gould had notice of a duty to register from his obligations under Pennsylvania law.

SORNA tasks the Attorney General with providing notice of SORNA registration duties to previously convicted offenders who are not in custody. 42 U.S.C. § 16917. To be convicted under 18 U.S.C. § 2250(a), an offender must "knowingly fail[ ] to register or update a registration as required by [SORNA]." Gould argues that he could not have knowingly violated SORNA without notice from the Government.

Gould relies on *Lambert v. California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957). In *Lambert,* the Court determined that a woman's conviction for failing to comply with a felon registration statute violated her due process rights because she received no prior notice of her duty to register. 355 U.S. at 229, 78 S.Ct. 240. Importantly, the Court assumed that the woman had no actual knowledge of her duty to register, and that there was no proof of a probability of such knowledge. *Id.* at 227, 229, 78 S.Ct. 240. *Lambert's* holding therefore applies when a "person, wholly passive and unaware of any wrongdoing, is brought to the bar of justice for condemnation in a criminal case." *Id.* at 228, 78 S.Ct. 240.

■ Lambert is inapplicable to this case. Gould was well aware of his duty to update his registration in Pennsylvania, and he had previously been convicted of failing to provide necessary registration information in West Virginia. Thus, when Gould moved to Maryland, and failed to register, his prior knowledge of a duty to register under state law qualified as effective notice under SORNA.[8] Individuals who are subject to regulation have at least

---

7. Gould's additional argument that he is unable to initially register under SORNA is without merit. The case cited by Gould for this view relates to an indictment of a pre-SORNA convicted offender before the Interim Order. *See Dillenbeck,* 2007 WL 2684838, at *3. Gould's duty to register arose after February 28, 2007.

8. The majority of courts resolving this issue have found that notice is not required. *See Pitts,* 2007 WL 3353423, at *7; *Ambert,* 2007 WL 2949476, at *2; *United States v. Lovejoy,* 516 F.Supp.2d 1032, 1037 (D.N.D.2007); *May,* 2007 WL 2790388, at *6; *United States v. Kent,* No. 07–00226–KD, 2007 WL 2746773, at *1 (S.D.Ala. Sept. 20, 2007); *United States v. Mitchell,* No. 07CR20012, 2007 WL 2609784, at *2 (W.D.Ark. Sept. 6,

2007); *United States v. Lawrance,* No. CR–07–166–D, slip op. at 14 (W.D.Okla. Sept. 5, 2007); *Buxton,* No. CR–07–082–R, slip op. at 6; *United States v. Bennett,* No. 07CR20040, 2007 WL 2461696, at *2 (W.D.Ark. Aug. 27, 2007); *United States v. Torres,* No. 07–50035, 2007 WL 2343884, at *2 (W.D.Ark. Aug. 15, 2007); *United States v. Hulen,* No. 07–30004, 2007 WL 2343885, at *2 (W.D.Ark. Aug. 15, 2007); *Gonzales,* 2007 WL 2298004, at *2–6; *Marcantonio,* 2007 WL 2230773, at *2; *Roberts,* 2007 WL 2155750, at *2; *Hinen,* 487 F.Supp.2d at 754; *United States v. Markel,* No. 06–20004, 2007 WL 1100416, at *2 (W.D.Ark. Apr. 11, 2007); *Manning,* 2007 WL 624037, at *2; *Cardenas,* 2007 WL 4245913, at *13–14; *United States v. Howell,* No. CR07–2013–MWB, 2007 WL 3302547, at *17 (N.D.Iowa Nov. 8, 2007) (magistrate opinion).

a general knowledge of when they are in compliance with the law. *See Roberts,* 2007 WL 2155750, at \*2. Gould's claim that he needed notice of a duty under SORNA is without merit.

Gould argues that the Proposed Guidelines require advance notice to registrants. The Proposed Guidelines mention possible situations when a previously convicted sex offender would need to be instructed about SORNA requirements and have his registry information updated accordingly. 72 Fed.Reg. at 30,228.[9] The case cited by Gould as support for the view that the Proposed Guidelines provide the only basis for notification is not applicable. *See Smith,* 528 F.Supp.2d at 618, 2007 WL 1725329, at \*3. In *Smith,* the court found that SORNA did not apply to the offender because he was charged with violating the registry requirement prior to the Interim Order. *Id.* In dicta, the court determined that the subsequently issued guidelines supported the view that the offender—who was charged with violating SORNA on November 24, 2006—had not knowingly violated the statute on the date charged in his indictment. *Id.* at 619–20, 2007 WL 1725329, at \*4. Gould's understanding of the registry process in Pennsylvania and West Virginia demonstrates that he was not a passive participant who was unaware of the illegality of failing to register.

D. Nondelegation Doctrine

Gould argues that Congress's delegation of authority to the Attorney General to determine the retroactivity of SORNA was in violation of the nondelegation doctrine. The Government contends that the Attorney General's authority was not so broad, but even if the Attorney General could determine the retroactivity of SORNA to all past offenders, the nondelegation doctrine was not violated.

■ The Supreme Court has only twice found the nondelegation doctrine violated. *See Panama Refining Co. v. Ryan,* 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935); *A.L.A. Schechter Poultry Corp. v. United States,* 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935). The nondelegation doctrine stems from the tripartite system of our federal government. *Mistretta v. United States,* 488 U.S. 361, 371, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). The Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States," U.S. Const. art. I, § 1, and an overly broad delegation of that authority impedes our constitutional structure, *see Indus. Union Dep't v. Am. Petroleum Inst.,* 448 U.S. 607, 673, 100 S.Ct. 2844, 65 L.Ed.2d 1010 (1980) (Rehnquist, J., concurring). But so long as "Congress shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform, such legislative action is not a forbidden delegation of legislative power." *J.W. Hampton, Jr., & Co. v. United States,* 276 U.S. 394, 409, 48 S.Ct. 348, 72 L.Ed. 624 (1928).

■ Gould has not demonstrated that Congress's delegation of authority to the Attorney General violated the nondelegation doctrine. As discussed above, the Attorney General was given the authority to determine the retroactivity of SORNA to offenders convicted before SORNA's enactment. This is not entirely new ground

---

9. In one example that bears relevance to Gould's case, the Proposed Guidelines mention a hypothetical offender who was required to register for life for a 1995 conviction, and was released from prison in 2005. 72 Fed. Reg. at 30,228. The offender initially registered, but was not informed that he would have to appear periodically in person to verify his information. *Id.* That offender would need additional instructions about his SORNA obligations to be liable. *Id.*

for the DOJ, as the Attorney General had previously been tasked with enforcing SORNA's predecessor offender statute. *See* Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, 42 U.S.C. § 14071 (2000). SORNA tasks the Attorney General with "specify[ing] the applicability" of SORNA to those convicted before its enactment. Given the DOJ's prior experience with statutes of this kind, this direction is sufficiently intelligible and does not violate the nondelegation doctrine.[10]

### E. Administrative Procedure Act

Gould argues that the Attorney General's Interim Order is invalid under the Administrative Procedure Act ("APA") because no public notice period was provided. The Government counters that it had good cause to issue the rule without public comment.

The APA requires advance public notice for proposed rules and publication before the rule's effective date unless "good cause" is established. *See* 5 U.S.C. § 553(b)(3)(B), (d)(3) (2000). Good cause exists when public notice and comment procedures are "impracticable, unnecessary, or contrary to the public interest." *Id.* § 553(b)(3)(B). Although courts have cautioned that the good cause exception should be narrowly construed, *Utility Solid Waste Activities Group v. EPA*, 236 F.3d 749, 754 (D.C.Cir.2001), courts have approved of interim rules that are accompanied with a sufficient justification, *see Am. Fed'n of Gov't Employees v. Block*, 655 F.2d 1153, 1157–58 (D.C.Cir.1981). The one case to address this issue in the SORNA context found that good cause had been satisfied. *See Pitts*, 2007 WL 3353423, at *8.

■ The Interim Order specified that the rule would become immediately effective because prior public notice would be contrary to the public interest. *See* 72 Fed.Reg. 8897. The DOJ justification for immediate implementation was a need for legal certainty about SORNA's retroactive application to pre-SORNA convicted offenders and a concern for public safety that these offenders be registered as quickly as possible. *Id.* at 8896. Delaying implementation of the Interim Order to meet the formal rulemaking requirements of the APA would be contrary to the public interest. The DOJ's valid concern for public safety, legal certainty, and swift implementation of the rule was adequately justified in its interim order. Moreover, DOJ has since issued proposed guidelines that are open to the formal public notice and comment review period. The Attorney General demonstrated good cause for failing to comply with the strictures of the APA, therefore, the Interim Order was valid.[11]

### F. Commerce Clause

Gould asserts that SORNA violates the Commerce Clause because it regulates in-

---

**10.** The weight of judicial authority favors this reading. *See Pitts*, 2007 WL 3353423, at *8; *Ambert*, 2007 WL 2949476, at *7; *Cardenas*, 2007 WL 4245913, at *9–10; *Lovejoy*, 2007 WL 2812681, at *3; *May*, 2007 WL 2790388, at *6; *United States v. Kelton*, No. 5:07–cr–30–Oc–10GRJ, 2007 WL 2572204, at *1 (M.D.Fla. Sept. 5, 2007); *Sawn*, 2007 WL 2344980, at *1; *Gonzales*, 2007 WL 2298004, at *12; *United States v. Mason*, 510 F.Supp.2d 923, 932 (M.D.Fla.2007); *Hinen*, 487 F.Supp.2d at 753; *Madera*, 474 F.Supp.2d at 1262; *Gill*, 520 F.Supp.2d at 1348–49; *Howell*, 2007 WL 3302547, at *16 (magistrate opinion); *United States v. Beasley*, No. 1:07–CR–115–TCB, 2007 WL 3489999, at *8 (N.D.Ga. Oct. 10, 2007) (magistrate opinion).

**11.** The only court to address the APA issue agreed with the DOJ's assessment in the Interim Order that holding public notice and comment proceedings before implementing the rule was contrary to the public interest. *See Pitts*, 2007 WL 3353423, at *8.

trastate activity. The Government responds that Gould misconstrues relevant case law concerning the Commerce Clause, and SORNA has an interstate commerce nexus.

■ The Commerce Clause gives Congress the authority "[t]o regulate Commerce with foreign nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. Pursuant to this authority, Congress may regulate the channels of interstate commerce, the instrumentalities of interstate commerce, and activities having a substantial relation to interstate commerce. *United States v. Lopez,* 514 U.S. 549, 558–59, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995); *see also United States v. Morrison,* 529 U.S. 598, 610–13, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000). Although Congress may not exercise this power if the conduct alleged is noneconomic and measured by its aggregate effect on interstate commerce, *Morrison,* 529 U.S. at 617, 120 S.Ct. 1740, if Congress decides that a particular activity is a threat to the national market, it may regulate the entire applicable class, *see Gonzales v. Raich,* 545 U.S. 1, 17, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005). There only need be a rational basis for determining whether the activity regulated substantially affects interstate commerce. *Id.* at 22, 125 S.Ct. 2195.

■ Based on his reading of *Morrison* and *Lopez,* Gould contends that Congress has no Commerce Clause authority to regulate an offender's duty to register under a prior federal or D.C. conviction. Gould argues that failure to register is a purely local matter that has no impact on inter-

state commerce. Gould's view misinterprets the scope of *Lopez* and *Morrison,* and fails to account for the purpose of SORNA. Critical to the Court's findings in *Morrison* and *Lopez* was that firearm possession in school zones or gender-motivated violence were noneconomic, primarily intrastate matters, with tenuous connections to interstate commerce. *Morrison,* 529 U.S. at 613, 120 S.Ct. 1740; *Lopez,* 514 U.S. at 567, 115 S.Ct. 1624. In contrast, the purpose of SORNA is to track sex offenders from jurisdiction to jurisdiction, and to create a comprehensive national offender registry. 42 U.S.C. §§ 16901, 16913. That Gould's indictment rests on his prior D.C. conviction does not mean that registration and the maintenance of offender databases do not affect interstate commerce. Accordingly, Gould's claim that the portion of his indictment resting on 18 U.S.C. § 2250(a)(2)(A) offends the Commerce Clause is without merit.

Gould also contends that SORNA violates the Commerce Clause because there is no nexus between interstate travel and a failure to register under 18 U.S.C. § 2250(a)(2)(B). Unlike the statutes in *Lopez* or *Morrison,* § 2250(a)(2)(B) focuses on the regulation of persons in interstate travel. The *Lopez* Court explained that Congress may regulate "persons or things in interstate commerce, even though the threat may come only from intrastate activities." 514 U.S. at 558, 115 S.Ct. 1624. Federal jurisdiction under § 2250(a)(2)(B) is only acquired when an offender who must register under SORNA "travels in interstate or foreign commerce." *See Hinen,* 487 F.Supp.2d at 758–59; *Madera,* 474 F.Supp.2d at 1265. SORNA, therefore, does not violate the Commerce Clause.[12]

---

**12.** Every court to examine a Commerce Clause challenge to SORNA has rejected the argument. *See Pitts,* 2007 WL 3353423, at *4–5; *Ambert,* 2007 WL 2949476, at *4; *Cardenas,* 2007 WL 4245913, at *12; *Lovejoy,* 516 F.Supp.2d at 1038; *May,* 2007 WL 2790388, at *7; *Kelton,* 2007 WL 2572204, at *1; *Lawrance,* No. CR–07–166–D, slip op. at 11–13; *Buxton,* No. CR–07–082–R, slip op. at

## G. Ex Post Facto Clause

Gould argues that applied to him, § 2250(a)(2)(B) violates the Ex Post Facto Clause of the Constitution. The Government counters that SORNA is not punitive and therefore not an ex post facto law.

■ The Constitution provides that "[n]o Bill of Attainder or ex post facto Law shall be passed." U.S. Const. art. I, § 9, cl. 3. Legislatures therefore may not "retroactively alter the definition of crimes or increase the punishment for criminal acts." *Collins v. Youngblood,* 497 U.S. 37, 43, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). To assess whether a law is ex post facto, it must first be determined whether the legislature intended the statute to be civil or criminal. *Kansas v. Hendricks,* 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). If this inquiry reveals that the law was punitive, then its enactment violates the Ex Post Facto Clause. *Smith v. Doe,* 538 U.S. 84, 92, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003). If, however, the legislature intended the scheme to be civil and nonpunitive, it must be determined whether the scheme itself is so punitive that it negates the legislature's contrary intent. *Id.*

The Supreme Court recently held that Alaska's sex offender registration and notification laws were not an ex post facto punishment of previously convicted offenders. *Smith,* 538 U.S. at 105, 123 S.Ct. 1140. In *Smith,* the Court determined that a statutory registration scheme very similar to SORNA was intended by the Alaska legislature to be civil and nonpunitive. *Id.* at 98, 123 S.Ct. 1140. The *Smith* Court also determined that the effect of the registration scheme was not so punitive as to negate the legislature's intention. *Id.* at 104, 123 S.Ct. 1140.

Despite similarities between the two statutory schemes, courts are split on the applicability of *Smith*'s analysis to SORNA. Some courts have confined *Smith*'s holding to whether sex offender registration requirements are retroactive punishments. *See, e.g., United States v. Wilson,* No. 2:06–cr–867 TC, 2007 WL 3046290, at *2 (D.Utah Oct. 16, 2007). These courts reason that the offenders in *Smith* were not facing criminal prosecution for failing to register, and that the *Smith* Court only addressed whether the resulting publication of their information was retroactive punishment.[13] Other courts have viewed *Smith*'s holding as determinative of the question of whether imposition of penalties for pre-SORNA convictions violates the Ex Post Facto Clause.[14]

■ Although Gould correctly observes that *Smith* addressed the question of

10–11; *Sawn,* 2007 WL 2344980, at *1; *Gonzales,* 2007 WL 2298004, at *9; *United States v. Husted,* No. CR–07–105–T, slip op. at 4–6 (W.D.Okla. June 29, 2007); *United States v. Lang,* No. CR–07–0080–HE, slip op. at 7 (W.D.Okla. June 5, 2007); *Mason,* 510 F.Supp.2d at 932; *Hinen,* 487 F.Supp.2d at 758; *Templeton,* 2007 WL 445481, at *4; *Madera,* 474 F.Supp.2d at 1265; *Muzio,* 2007 WL 2159462, at *7; *Howell,* 2007 WL 3302547, at *18 (magistrate opinion); *Beasley,* 2007 WL 3489999, at *9 (magistrate opinion).

13. *See, e.g., Wilson,* 2007 WL 3046290, at *2; *United States v. Smith,* 481 F.Supp.2d 846, 852 (E.D.Mich.2007); *United States v. Stin-*

son, 507 F.Supp.2d 560, 565–66 (S.D.W.Va. 2007); *Muzio,* 2007 WL 2159462, at *6–7; *Gill,* 520 F.Supp.2d at 1344–46; *Sallee,* 2007 WL 3283739, at *2 n. 7; *Kent,* 2007 WL 2746773, at *1; *see also Deese,* 2007 WL 2778362, at *3 & n. 7.

14. *See, e.g., Madera,* 474 F.Supp.2d at 1263–64; *United States v. Carr,* No. 1:07–CR–73, 2007 WL 3256600, at *2 (N.D.Ind. Nov. 2, 2007); *Pitts,* 2007 WL 3353423, at *6; *May,* 2007 WL 2790388 at *5; *Buxton,* No. CR–07–082–R, slip op. at 7; *Torres,* 2007 WL 2343884, at *2; *Hulen,* 2007 WL 2343885, at *2; *Mason,* 510 F.Supp.2d at 929; *Hinen,* 487 F.Supp.2d at 756–57.

whether an offender's registration was retroactive punishment, *Smith*'s reasoning is certainly applicable here because SORNA tracks the Alaska scheme and its enactment postdates the *Smith* decision. SORNA's purpose is "to protect the public from sex offenders and offenders against children, and in response to the vicious attacks by violent predators." 42 U.S.C. § 16901. There is little indication that Congress's intended purpose in enacting SORNA was punitive. *See Hinen,* 487 F.Supp.2d at 755. Rather, the registry system was intended as a nationwide public safety system. 42 U.S.C. § 16901. That previous offenders may be convicted for failing to register under SORNA does not increase the punishment for their prior offenses. Indeed, only upon an offender's failure to register under SORNA, a new offense, do the enhanced penalties apply. 18 U.S.C. § 2250(a). Accordingly, SORNA does not violate the Ex Post Facto Clause.

## H. Tenth Amendment

Gould contends that SORNA violates the Tenth Amendment by commandeering state officials to run registries and update databases for a statute that the states have not yet implemented. The Government counters that SORNA does not impose any further obligations on state authorities.

■ The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. The Tenth Amendment prohibits federal officials from conscripting, or commandeering, state officials to administer and enforce a federal regulatory program. *Printz v. United States,* 521 U.S. 898, 935, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997). Congress is allowed, however, to condition federal grants to states upon fulfillment of federal statutory or administrative directives. *See New York v. United States,* 505 U.S. 144, 171–73, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992); *see also South Dakota v. Dole,* 483 U.S. 203, 211, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987) (Congress constitutionally conditioned federal highway funds on state implementation of lower drinking age).

■ The only court to address whether SORNA regulations imposed unconstitutional obligations on state officials found that the Tenth Amendment had not been violated. *See Pitts,* 2007 WL 3353423, at *8–9. In *Pitts,* the court determined that SORNA imposed no new obligations on state officials, as the duties required of them were already imposed under applicable state laws. *Id.* at *9. This view is not entirely accurate, as SORNA does require state officials to change offender registration procedures to comply with the federal program.[15] But Congress expressly stated that a state's failure to substantially implement SORNA by July 27, 2009, would only result in the loss of federal funding. *See* 42 U.S.C. § 16925(a); *see also id.* § 16925(d) ("The provisions of this subchapter that are cast as directions to jurisdictions or their officials constitute, in relation to States, only conditions required to avoid the reduction of Federal funding under this section."). State officials are not commandeered to implement the SORNA requirements. Rather, states are offered monetary incentives to amend their existing offender registration requirements. Accordingly, SORNA's directives do not violate the Tenth Amendment.

---

**15.** *Compare* 42 U.S.C. § 16914(b)(3) (public registry must include offenders' criminal history and status of parole, probation, or supervised release), *with* Md.Code Ann., Crim. Proc. § 11–707 (public registry need only include crime for which offender was convicted).

## III. Conclusion

For the reasons discussed above, Gould's motion to dismiss his indictment will be denied.