# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2427

_____

United States of America,          *
                                           *

          Plaintiff - Appellee,     *

                                         *   Appeal from the United States
        v.                       *   District Court for the
                                         *   District of Nebraska.

Scott A. Hacker,              *

                                         *

          Defendant - Appellant.   *

_____

Submitted: March 11, 2009
Filed: May 13, 2009

_____

Before WOLLMAN, BRIGHT, and COLLOTON, Circuit Judges.

_____

BRIGHT, Circuit Judge.

Appellant Scott Hacker challenges the district court's[1] denial of his motion to dismiss an indictment charging him with failing to register as a sex offender under the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. §§ 16901-16991. We have jurisdiction over this appeal from 28 U.S.C. § 1291. Because the district court did not err by denying Hacker's motion, we affirm.

_____

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

## FACTS AND PROCEDURAL HISTORY

The material facts are undisputed. In 1995, Hacker was convicted in Texas of aggravated sexual assault of a child, a first-degree felony, for which he received a sentence of 10 years' probation. In 1996, Hacker was convicted of sexual assault in Texas and sentenced to five years' imprisonment. After being released from prison in 2000, Hacker registered as a sex offender in Texas.

In 2001, Hacker notified the Texas Department of Public Safety that he moved to California. He initially registered in California, but failed to keep his registration in compliance with California law after December 5, 2002. In the summer of 2002, Hacker moved to Wisconsin. Although he registered on arrival, he did not notify California authorities that he had moved to another state. In May 2007, Hacker moved to Nebraska, where he obtained a Nebraska driver's license. Hacker did not register as a sex offender in Nebraska.

In July 2007, Hacker was indicted for failing to register in accordance with SORNA, in violation of 18 U.S.C. § 2250(a). Specifically, the indictment alleged that Hacker, having been convicted in Texas of an offense requiring him to register as a sex offender, traveled in interstate commerce to Nebraska and knowingly failed to register as a sex offender there.

Hacker moved to dismiss the indictment, arguing that Congress (1) lacked authority under the Commerce Clause to enact SORNA's registration requirements and penalty provision; (2) violated the Tenth Amendment by compelling states to accept registrations from a federally mandated sex-offender program; and (3) granted the Attorney General the authority to legislate the scope of SORNA's retrospective reach in violation of the non-delegation doctrine.

-2-

After a hearing, Magistrate Judge Thomas D. Thalken issued a report and recommendation, which concluded that Hacker's motion should be denied. In February 2008, the district court adopted the report and recommendation in its entirety.

Hacker then entered into a conditional guilty-plea agreement with the government, reserving the right to appeal the denial of his motion to dismiss. In June 2008, Hacker was sentenced to 18 months' imprisonment, followed by 10 years' supervised release. This timely appeal follows.

## DISCUSSION

We review de novo the denial of a motion to dismiss an indictment. *See United States v. Smith*, 171 F.3d 617, 619 (8th Cir. 1999). Hacker challenges the constitutionality of SORNA, contending that it violates the Commerce Clause, the Tenth Amendment, and the non-delegation doctrine. "We review a challenge to the constitutionality of a federal statute de novo." *United States v. Betcher*, 534 F.3d 820, 823 (8th Cir. 2008). Hacker also argues, for the first time on appeal, that the Attorney General violated a provision of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553, in promulgating an interim rule that made SORNA's registration requirement apply retroactively. This is a question of law, which we review de novo. *See* 5 U.S.C. § 706(2)(D); *Gumaneh v. Mukasey*, 535 F.3d 785, 788 (8th Cir. 2008) ("We review questions of law de novo . . . .").

## I.     SORNA

Title I of the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"), Pub. L. No. 109-248 (2006), includes SORNA. The Adam Walsh Act became law on July 27, 2006. SORNA's registration provision, § 16913, provides, in relevant part:

(a) In general

A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

(b) Initial registration

The sex offender shall initially register--
    (1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or
    (2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

(c) Keeping the registration current

A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

SORNA also created a federal criminal offense, 18 U.S.C. § 2250, of failing to register as a sex offender. Section 2250, provides, in relevant part:

(a) In general. --Whoever–
    (1) is required to register under the Sex Offender Registration and Notification Act;
    (2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction

under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both.

II.     Commerce Clause

Hacker argues first that SORNA's registration requirements and criminal-enforcement provision violate the Commerce Clause. Specifically, Hacker asserts that SORNA does not regulate one of the three categories of activity described by the Supreme Court in *United States v. Lopez*, 514 U.S. 549 (1995).

But as Hacker acknowledges, our case law forecloses this argument. In *United States v. May*, we rejected a similar challenge to § 2250, holding that SORNA's penalty provision "contains a sufficient nexus to interstate commerce." 535 F.3d 912, 922 (8th Cir. 2008). And recently, this court upheld the registration requirements in § 16913 against a Commerce Clause challenge, concluding that they "are reasonably adapted to the legitimate end of regulating 'persons or things in interstate commerce' and 'the use of the channels of interstate commerce.'" *United States v. Howell*, 552 F.3d 709, 717 (8th Cir. 2009) (quoting *Lopez*, 514 U.S. at 558-59).

We are bound by these decisions. *See Betcher*, 534 F.3d at 823 ("[I]t is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel."); *Owsley v. Luebbers*, 281 F.3d 687, 690 (8th Cir. 2002). Because we have already concluded that SORNA's registration and penalty provisions are valid exercises of congressional authority under the Commerce Clause, we reject Hacker's argument.

III.    Tenth Amendment

Hacker argues next that the district court should have dismissed the indictment because "SORNA impermissibly encroaches upon state power in violation of the Tenth Amendment."  This appears to be an issue of first impression not only in our circuit, but also in any federal appellate court.[2]

But before reaching the merits of Hacker's Tenth Amendment argument, we must ensure that he has standing to raise the argument.  *See Pucket v. Hot Springs Sch. Dist. No. 23-2*, 526 F.3d 1151, 1156 (8th Cir. 2008) (recognizing that standing is a jurisdictional requirement and "can be raised by the court sua sponte at any time during the litigation" (internal quotation marks omitted)).  We conclude that he does not.[3]

The Eighth Circuit has not decided whether a private individual has standing to bring a Tenth Amendment claim.[4]  The Tenth Amendment provides that "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."  U.S. Const. amend. X.  It appears that six circuits have analyzed whether a private party has standing to

---

[2]Many district courts have, however, considered this issue.  *See, e.g.*, *United States v. Hall*, 577 F. Supp. 2d 610, 616-17 (N.D.N.Y. 2008); *United States v. Vasquez*, 576 F. Supp. 2d 928, 938-39 (N.D. Ill. 2008); *United States v. Gould*, 526 F. Supp. 2d 538, 549 (D. Md. 2007).  We are unaware of a case holding that SORNA violates the Tenth Amendment.

[3]Neither party raised the question of standing to assert a Tenth Amendment claim in its opening brief.  This court requested supplemental briefing on the issue.

[4]In *Johnson Controls, Inc. v. City of Cedar Rapids*, we concluded that a city had standing to assert that both it and the State of Iowa were "state entit[ies] protected by the [T]enth [A]mendment" and reached the merits of the city's Tenth Amendment claim.  713 F.2d 370, 377 (8th Cir. 1983).  But we did not address whether a private individual has standing.

assert a Tenth Amendment claim. The Seventh and Eleventh Circuits have permitted private parties to bring such claims. *See Gillespie v. City of Indianapolis*, 185 F.3d 693, 703-04 (7th Cir. 1999); *Atlanta Gas Light Co. v. U.S. Dep't of Energy*, 666 F.2d 1359, 1368 n.16 (11th Cir. 1982). Conversely, the First, Second, Ninth and Tenth Circuits have concluded that private parties lack standing to raise a Tenth Amendment claim. *See Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 972 (9th Cir. 2009); *Brooklyn Legal Servs. Corp. B. v. Legal Servs. Corp.*, 462 F.3d 219, 234-36 (2d Cir. 2006); *Medeiros v. Vincent*, 431 F.3d 25, 33-36 (1st Cir. 2005); *United States v. Parker*, 362 F.3d 1279, 1284 (10th Cir. 2004). We now join the majority of circuits and hold that a private party does not have standing to assert that the federal government is encroaching on state sovereignty in violation of the Tenth Amendment absent the involvement of a state or its instrumentalities.

In *Tenn. Elec. Power Co. v. Tenn. Valley Auth.*, state-chartered utility companies argued that the sale of electric power by a federally chartered corporation violated the Tenth Amendment because the federal sales lowered electricity prices. *See* 306 U.S. 118, 143 (1939). The federal power sales forced the state-chartered companies to lower their prices, and the companies argued that such a scheme was an impermissible federal regulation of a local matter. *See id.* In rejecting the utility companies' argument, the Supreme Court stated:

> The sale of government property in competition with others is not a violation of the Tenth Amendment. As we have seen there is no objection to the [federally chartered corporations'] operations by the states, and, if this were not so, the [utility companies], absent the states or their officers, have no standing in this suit to raise any question under the [Tenth] [A]mendment.

*Id.* at 144. Accordingly, it appears that the Supreme Court has concluded that state representation is a prerequisite for a federal court to exercise jurisdiction over a Tenth Amendment challenge.

Although we recognize that the Supreme Court's pronouncement in *Tenn. Elec. Power Co.* has been disputed, we nonetheless apply its rule here.[5] We are aware of no directly contradictory authority from the Supreme Court. *See Hohn v. United States*, 524 U.S. 236, 252-53 (1998) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality."). And our conclusion finds support in the Court's more general standing jurisprudence. For example, prudential standing principles require that a plaintiff "'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 80 (1978) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). The approach we adopt today comports with this prudential standing principle.

Here, Hacker challenges SORNA in his individual capacity; there is no plaintiff that represents a state or even its instrumentality. Thus, the "requisite representation by the states or their officers is notably absent." *Brooklyn Legal Servs.*, 462 F.3d at 234. And Hacker has not even argued that his interests are aligned with those of a state.[6] Accordingly, we conclude that Hacker lacks standing to raise a Tenth Amendment challenge to SORNA and do not reach the merits of his argument.

---

[5]*See, e.g.*, *Gillespie*, 185 F.3d at 700 (arguing that *Tenn. Elec. Power Co.* has been weakened and citing cases).

[6]We note that at least one appellate court has speculated that a private party could assert a Tenth Amendment claim by showing that its claim "align[s] with the state's interest." *Parker*, 362 F.3d at 1284 (citing *Mountain States Legal Found. v. Costle*, 630 F.2d 754, 761 (10th Cir. 1980)). But we need not decide whether a state must actually be a party to a Tenth Amendment challenge or if it is sufficient for a private party to assert that its interests are merely aligned with those of a state. Here, Hacker has not even argued that his interests are aligned with a state's interest.

## IV. Non-delegation Doctrine

Hacker also argues that the district court should have dismissed the indictment because Congress impermissibly delegated to the Attorney General the authority to determine SORNA's retroactive effect. In so doing, Hacker argues, Congress allowed the Attorney General to "legislate the scope of SORNA's reach."[7]

SORNA requires that a sex offender register either before he completes a term of imprisonment "with respect to the offense giving rise to the registration requirement" or, if he receives no prison time, within three days of sentencing. § 16913(b). For those sex offenders "unable to comply" with the initial registration requirements in subsection (b), SORNA delegated the authority to the Attorney General to determine its applicability. *See* § 16913(d). Specifically, subsection (d) provides that the Attorney General

> shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

*See id.* The Attorney General exercised his authority under this subsection in February 2007, when he issued an interim rule, which provides that "[t]he requirements of [SORNA] apply to all sex offenders convicted of the offense for which registration is required prior to enactment of that Act." 28 C.F.R. § 72.3 (2007); *see also* 72 Fed. Reg. 8894-01, 8896 (Feb. 28, 2007) (providing that it is

---

[7]The Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. Const. art. I, § 1. The Supreme Court has determined that this injunction prohibits Congress from delegating its legislative power to another branch. *See Mistretta v. United States*, 488 U.S. 361, 371-72 (1989).

"indisputably clear that SORNA applies to all sex offenders (as the Act defines that term) regardless of when they were convicted").

Citing *May*, the government asserts that Hacker lacks standing to bring a non-delegation challenge because he is not a "person unable to register before SORNA's enactment" and, therefore, he lacks the requisite personal stake in the controversy. In 1994, May pleaded guilty to the underlying sex offense, a misdemeanor, in Oregon state court. *See* 535 F.3d at 914. Subsequently, May traveled to Maryland and Iowa and failed to register in those states or update his Oregon registration. *See id.* at 915. In 2007, May was indicted for violating SORNA, the district court denied his non-delegation challenge, and refused to dismiss his indictment. *See id.* On appeal, this court held that May lacked standing to raise a non-delegation challenge to subsection (d) because "May was not a person unable to register before SORNA's enactment and § 16913(d)[] . . . does not even apply to him." *Id.* at 921. The *May* court reached this result by apparently construing subsection (d)'s "unable to comply" language as not applying to a third category of sex offenders: those who had already registered through a *state* sex-offender-registration program (but not with SORNA's system).

We are obliged to follow *May's* interpretation of § 16913(d). *See Betcher*, 534 F.3d at 823 (noting that one panel is bound by the decision of a prior panel). Accordingly, we conclude that Hacker lacks standing to assert a non-delegation-doctrine challenge to SORNA. *See May*, 535 F.3d at 921.

V.     Administrative Procedure Act

Hacker argues finally that the Attorney General's interim order, which requires sex offenders who were convicted of the offense for which registration was required before SORNA to register, violates the APA. Specifically, Hacker asserts that the Attorney General did not have good cause to promulgate the rule without the typical thirty-day notice-and-comment period. *See* 5 U.S.C. § 553(d).

As discussed above, *May* held that a similarly situated individual did not have standing to challenge Congress's delegation of the authority to create the interim rule. *See* 535 F.3d at 920-21. Because we are bound by *May*, Hacker was not "unable to comply with" the provisions of § 16913(b) and he, therefore, is not personally affected by the interim rule. *See id.* at 921. We therefore conclude that Hacker lacks standing to challenge the interim rule on APA grounds.

## CONCLUSION

Based on the foregoing, we affirm.

_____