PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 09-1205
_____

UNITED STATES OF AMERICA

v.

PAUL SHENANDOAH,
Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania

(D.C. No. 1-07-cr-00500-001)
District Judge:  The Honorable Christopher C. Conner
_____

Submitted Under Third Circuit LAR 34.1(a)
October 2, 2009

BEFORE: McKEE, CHAGARES,
and NYGAARD, Circuit Judges.

(Filed : February 9, 2010)

_____

Frederick W. Ulrich, Esq.
Thomas A. Thornton, Esq.
Office of the Federal Public Defender
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
        Counsel for Appellant


Martin C. Carlson, Esq.
Theodore B. Smith, III, Esq.
Office of the United States Attorney
228 Walnut Street, PO Box 11754
220 Federal Building and Courthouse
Harrisburg, PA  17108
        Counsel for Appellee

_____

OPINION OF THE COURT

_____

NYGAARD, Circuit Judge.

Paul Shenandoah was indicted in December of 2007 for failing to register as a sex offender in violation of the Sex Offender Registration and Notification Act (SORNA), 18 U.S.C. § 2250(1) and (2) and 42 U.S.C. § 14072(i)(1).  He was also charged with two counts of knowingly and willfully providing false information to law enforcement officials

regarding his federal sex offender registration offenses, in violation of 18 U.S.C. §§ 1001 and 1512(b)(3).

He pleaded not guilty and asked the District Court to dismiss the indictment, arguing that SORNA violated the Non-Delegation Doctrine, the Administrative Procedure Act, the *Ex Post Facto* Clause, the Due Process Clause, the Commerce Clause, the Tenth Amendment and his right to travel. The District Court denied the motion. *United States v. Shenandoah*, 572 F.Supp.2d 566 (M.D. Pa. 2008). Shenandoah then pleaded guilty to failing to register as a sex offender under SORNA, but reserved his right to appeal the order refusing to dismiss the indictment. *See* FED.R.CRIM.P. 11(a)(2); *United States v. Zudick*, 523 F.2d 848, 852 (3d Cir. 1975).

I.

The factual and procedural background of this appeal is straightforward and undisputed. An abbreviated recitation will suffice. Shenandoah, a New York resident, was convicted of third degree rape in February of 1996.[1] He executed a New York state sexual offender registration form when he was paroled in February of 2002. This form requires, among other things, that he apprise New York of any changes in his home address and place of employment. Some time in August of

---

[1] Under New York state law, third degree rape is, essentially, a form of statutory rape which involves, *inter alia*, sexual intercourse with another person less than seventeen years of age. *See* New York Penal Law § 130.25 (McKinney 2001).

2007, Shenandoah's employment as an iron worker required that he travel to, and relocate in, York County, Pennsylvania. He failed, however, either to register as a sex offender in Pennsylvania, or to modify his New York registration to reflect his change of residence and employment, leading to his indictment.

II.

The Adam Walsh Child Protection and Safety Act of 2006, Pub.L. No. 109-248, 120 Stat. 587, was enacted to close the loopholes in previous sex offender registration legislation and to standardize registration across the states.[2] *See United States v. Ensminger*, 567 F.3d 587, 588 (9th Cir. 2009). The Adam Walsh Act is divided into seven titles, the first of which contains SORNA.

SORNA creates a national sex offender registry with the goal of eliminating inconsistencies among state laws. *Id.* SORNA applies to a broadly-defined class of "sex offenders,"

---

[2] In 1994, Congress enacted the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, as amended, 42 U.S.C. § 14071, which conditions federal law enforcement funding on states' adoption of mandatory sex offender registration laws. *Smith v. Doe*, 538 U.S. 84, 89-90 (2003). By 1996, every state and the District of Columbia had enacted some version of the Act, which is commonly termed a "Megan's Law." *Id.*

which includes persons convicted of child pornography offenses as well as almost all offenses involving illegal sexual conduct. *See* 42 U.S.C. § 16911. SORNA sets forth requirements for offenders who must initially register, and for those offenders who are already registered, but must update their registration:

(a) In general

A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

(b) Initial registration

The sex offender shall initially register-

(1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or

(2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

(c) Keeping the registration current

A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

(d) Initial registration of sex offenders unable to comply with subsection (b) of this section

The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

(e) State penalty for failure to comply

Each jurisdiction, other than a Federally recognized Indian tribe, shall provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this subchapter.

42 U.S.C. § 16913. SORNA provides for criminal penalties for failing to comply with its registration requirements. Section 2250(a) states as follows:

Whoever-

(1) is required to register under the Sex Offender Registration and Notification Act;
(2) (A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a). The Attorney General is also directed to "maintain a national database . . . for each offender." 42 U.S.C. § 16919(a).

SORNA requires states to implement the statute or lose "10 percent of the funds that would otherwise be allocated" to the state under the Omnibus Crime Control and Safe Streets Act

of 1968 for a given year. 42 U.S.C. § 16925(a). States are required to "maintain a jurisdiction-wide sex offender registry conforming to the requirements of [SORNA]," 42 U.S.C. § 16912(a); "provide a criminal penalty" for a sex offender's failure to register, 42 U.S.C. § 16913(e); and "immediately . . . provide the information into the registry" about an offender who has registered or updated a registration to other entities, including the Attorney General, local law enforcement agencies and certain social service and volunteer organizations that work with children. 42 U.S.C. § 16921(b).

Responding to the directive contained in § 16913(d), the Attorney General initially announced an interim rule that became effective on February 28, 2007. See 72 FED. REG. 8894 (Feb. 28, 2007). Pursuant to this rule, the Attorney General declared that SORNA's requirements applied "to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of [SORNA]." 28 C.F.R. § 72.3 (2007). The Attorney General then followed up with more detailed proposed guidelines that were subject to notice and comment. *See* 72 FED. REG. 30210 (May 30, 2007). The Attorney General's final regulations on the interpretation and implementation of SORNA became effective on July 2, 2008, one week after Shenandoah filed his Motion to Dismiss. *See* 73 FED. REG. 38030 (July 2, 2008).

### III.

Shenandoah raises numerous challenges to SORNA. He asserts that SORNA did not apply to him since neither New York nor Pennsylvania have implemented the law. Further, he argues that his prosecution under SORNA violates due process because it was impossible for him to comply with the statute's dictates and because he did not receive any notice of his duty to register. Shenandoah also asserts that SORNA violates the

Commerce Clause, the Tenth Amendment and his constitutional right to travel. Finally, he maintains that SORNA violates the Nondelegation Doctrine and the Administrative Procedure Act. There have been hundreds of similar challenges to the statute filed in federal courts around the nation, each raising constitutional challenges to SORNA. To date, the Courts of Appeal for the Fourth, Fifth, Seventh, Eighth, Ninth, Tenth and Eleventh Circuits have all rejected various constitutional challenges to SORNA. *See United States v. George*, 579 F.3d 962 (9th Cir. 2009); *United States v. Whaley*, 577 F.3d 254 (5th Cir. 2009); *United States v. Gould*, 568 F.3d 459 (4th Cir. 2009); *United States v. Ambert*, 561 F.3d 1202 (11th Cir. 2009); *United States v. Dixon*, 551 F.3d 578 (7th Cir. 2008); *United States v. Lawrance*, 548 F.3d 1329 (10th Cir. 2008); *United States v. May*, 535 F.3d 912 (8th Cir. 2008).

Traditionally, when reviewing a motion to dismiss an indictment, our standard of review is mixed, employing plenary or *de novo* review over a district court's legal conclusions, and reviewing any challenges to a district court's factual findings for clear error." *United States v. Nolan-Cooper*, 155 F.3d 221, 229 (3d Cir. 1998); *see also United States v. Barbosa*, 271 F.3d 438, 469 (3d Cir. 2001). However, Shenandoah does not challenge the District Court's factual determinations. We are, therefore, reviewing *de novo* the District Court's legal conclusions.[3] We will affirm.

A.    Applicability of SORNA

As a threshold argument, Shendandoah contends that SORNA does not apply to  him because neither Pennsylvania

---

[3]    The District Court had jurisdiction under 18 U.S.C. § 3231. Our jurisdiction is found in 28 U.S.C. § 1291.

nor New York have implemented the Act. Because Shenandoah was already a registered sex offender when SORNA was enacted, SORNA required only that he keep his registration current on and after July 27, 2006. The allegations in the indictment, to which Shenandoah provisionally pleaded guilty, clearly pertain to his failure to keep his registration current and, as such, are covered by 42 U.S.C. § 16913(a) & (c). *See, e. g., United States v. May*, 535 F.3d 912, 918-19 (8th Cir. 2008). Under these subsections of the statute, Shenandoah was required to keep his registration current in each jurisdiction in which he resided and, not later than three business days after each change of residence, to appear in person in at least one jurisdiction and inform that jurisdiction of all changes in the information required in the sex offender registry. *See* 42 U.S.C. § 16913(a) & (c). SORNA defines a "sex offender registry" as "a registry of sex offenders, and a notification program maintained by a jurisdiction." 42 U.S.C. § 16911(9). A registry that is operated by a state — like those operated by New York and Pennsylvania — and maintained after the effective date of SORNA satisfies this definition. Inasmuch as New York and Pennsylvania had sex offender registries in place after SORNA's enactment, SORNA demanded that Shenandoah update his registration by registering in Pennsylvania and informing New York of his change of address and employment. Nothing in this record demonstrates that this was impossible for Shenandoah to do.

Furthermore, the directive found in 42 U.S.C. § 16913(a) applies to sex offenders — not to states. When combined with SORNA's enforcement provision, 18 U.S.C. § 2250(a), an independent and federally enforceable duty is placed on sex offenders to register. New York and Pennsylvania may never implement SORNA, choosing, for whatever reason, to forego a portion of their federal funding. This failure to implement a federal law, however, does not give sex offenders a reason to disregard their federal obligation to update their state

-10-

registrations. When a sex offender travels in interstate commerce and disobeys the federal command to keep his or her registration current, as required by SORNA, he or she is subject to prosecution. 18 U.S.C. § 2250(a); *see also May*, 535 F.3d at 921.

Shenandoah's reliance on the Attorney General's SORNA Guidelines, 72 FED.REG. 30210 (May 30, 2007), is misplaced. In May 2007, the Attorney General issued proposed Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking ("SMART") Guidelines ostensibly to provide assistance to those states implementing SORNA. 72 FED.REG. at 30210. Shenandoah maintains that one of these SMART guidelines plainly instructs that convicted sex offenders have a duty to register only after a jurisdiction implements SORNA:

> With respect to sex offenders with pre-SORNA [enactment] or pre-SORNA implementation convictions who remain in the prisoner, supervision, or registered sex offender populations at the time of implementation . . . jurisdictions should endeavor to register them in conformity with SORNA as quickly as possible.

72 Fed.Reg. 30210, 30228 (May 30, 2007). Shenandoah argues that this language shows that SORNA was not intended to be enforced until after the states had implemented the law's requirements. We disagree. The plain language of SORNA requires an offender to update their state registration, independent of any construction of the statute by the Attorney General. Shenandoah's obligation to register was triggered by the enactment of the statute; it is not contingent upon a green light from the Attorney General. Moreover, in 72 FED. REG. 30210, also issued in May 2007, the Attorney General explicitly

stated that the applicability of SORNA is not limited to sex offenders who committed the predicate sex crime after a jurisdiction's implementation of a conforming registration program; rather, SORNA's requirements are applicable to all sex offenders. The regulation states that "registered sex offender populations" should be registered under SORNA's requirements. This suggests that, even before full implementation of SORNA, the obligation to register with the state applies. Instead of indicating that no obligation to register applies until SORNA is implemented, the regulation conveys that sex offenders should be registered at all times. Shenandoah was a "sex offender" under SORNA and as of July 27, 2006, he was required to — and capable of — registering and keeping his registration current in the jurisdiction in which he resided. New York and Pennsylvania both had registration processes Shenandoah could have employed in order to comply with § 16913(a) prior to either state's implementation of SORNA. Nothing in SORNA or its guidelines indicates that a jurisdiction's failure to comply with SORNA relieves offenders of the obligation to register in that jurisdiction. We reject, therefore, Shenandoah's arguments that he was unable to register under SORNA or that SORNA did not apply to him because neither New York nor Pennsylvania had implemented the law.

B.    *Ex Post Facto* Clause

The *Ex Post Facto* Clause of the Constitution forbids any law that "changes the punishment, and inflicts a greater punishment" for pre-existing conduct. *Hameen v. State of Delaware*, 212 F.3d 226, 235 (3d Cir. 2000) (citing *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798)). Shenandoah argues that subjecting him to punishment for failing to register under SORNA — a law not yet enacted when he was discharged from prison in New York — would violate the *Ex Post Facto*

-12-

Clause of the Constitution. We need not dwell long on this issue. Specifically, SORNA's criminal provision is violated when an offender who was (1) required to register in some jurisdiction; (2) knowingly failed to register or update a prior registration; and (3) traveled in interstate commerce. 18 U.S.C. § 2250(a). SORNA is not being applied retroactively. Instead, SORNA's focus is prospective. It creates a new punishment for a new offense, this new offense being traveling in interstate commerce and failing to register as a sex offender under SORNA after July 27, 2006. *See United States v. Zuniga,* 579 F.3d 845, 849 (8th Cir. 2009).

Shenandoah was required by law to update his registration as a sex offender. He failed to do so when he traveled from New York to Pennsylvania. His travel took place in August of 2007, after the enactment of the statute. Neither SORNA nor Shenandoah's conduct implicate the *Ex Post Facto* clause because neither contemplate retroactive events. Congress created a new law. Shenandoah committed a new crime.

Furthermore, the *Ex Post Facto* Clause would protect Shenandoah only if all the acts required for criminal punishment occurred before 18 U.S.C. § 2250 took effect. If any act took place later, the clause does not apply. *United States v. Dixon*, 551 F.3d 578, 584-85 (7th Cir. 2008). As just noted, Shenandoah was and is obliged to keep a current registration as a sex offender under SORNA and he had a reasonable opportunity to do so after enactment of the statute. Indeed, when he left prison, Shenandoah was properly registered under New York law, as required by SORNA. More than five years later (and more than a year after the enactment of SORNA), Shenandoah traveled interstate and then failed to update his registration. The *Ex Post*

*Facto* Clause has no application to his situation.[4]

      C.      Notice Arguments

Shenandoah next claims that he had no duty to register under SORNA because the Government failed to notify him of these new requirements. He argues that without this notification, he could not "knowingly fail to register." *See* 18 U.S.C. § 2250(a)(3). A provision of SORNA, 42 U.S.C. § 16917(a), requires that offenders being discharged from prison, be advised of their duty to register. Of course, because Shenandoah was released from prison before SORNA was enacted, it follows that he could not have been informed of the federal registration requirement upon release from custody as described in § 16917(a).

Shenandoah argues therefore, that because 18 U.S.C. § 2250(a) requires a knowing violation as an element of the offense, the Government did not allege a *prima facie* violation of § 2250(a). We disagree.

---

[4]      Shenandoah also raises a Due Process Clause argument, which we find baseless. He argues that it violates due process to criminalize his failure to do something that is impossible. He maintains it was "impossible" for him to satisfy SORNA's requirements because neither Pennsylvania nor New York had implemented the Act. However, we have previously determined that it was not impossible for Shenandoah to comply with SORNA's requirements. As the District Court correctly determined here, "A state's failure to update its registration system to conform with SORNA does not alter a sex offender's independent duty to register all information that is required by then-existing state law. *United States v. Shenandoah*, 572 F.Supp.2d 566, 578 (M.D. Pa. 2008).

-14-

Overlooked in this argument is the fact that SORNA's criminal provision is not a specific intent law. *See United States v. Gould*, 568 F.3d 459, 468 (4th Cir. 2009). As set out in 18 U.S.C. § 2250(a), "knowingly" modifies "fails to register." As the Court of Appeals for the Fourth Circuit held, "[t]here is no language requiring specific intent or a willful failure to register such that he must know his failure to register violated federal law." *Id.*, citing *Bryan v. United States*, 524 U.S. 184, 192-93 (1998) (noting that "the term 'knowingly' does not necessarily have any reference to a culpable state of mind or to knowledge of the law" and that "the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense"). Receipt of notice by a sex offender under 42 U.S.C. § 16917 is not an element of the federal offense with which Shenandoah was charged.

It is axiomatic that ignorance of the law does not provide a defense, for it is presumed that every person knows the law. *See Cheek v. United States*, 498 U.S. 192, 199 (1991); *see also United States v. Carbo*, 572 F.3d 112, 116 (3d Cir. 2009). Shenandoah argues further that even in the absence of actual notice of criminal liability, due process requires that a statute not criminalize "wholly passive conduct." Relying on the Supreme Court's decision in *Lambert v. California*, 355 U.S. 225, 228 (1957), Shenandoah claims that he is being prosecuted for wholly passive conduct, namely his failure to register. In *Lambert*, when considering a city ordinance that required all felons to register, the Supreme Court noted that "circumstances which might move [a felon] to inquire as to the necessity of registration are completely lacking" with respect to such a law. *Id.* at 229.

Unlike an isolated city ordinance that requires all members of the broad class of all felons to register, SORNA instead criminalizes the failure to register of a much more

-15-

narrowly targeted class of persons in a context where sex-offender registration has been the law for years and Shenandoah knew that. It is undisputed that Shenandoah knew that he was required to register under New York law, which mandated that he update his registration if he traveled or moved out of state and that he register in the new state. The registration form that Shenandoah signed notified him of his legal obligations as a sex offender even though he was not, and could not have been, notified of his duty under federal law. When SORNA was enacted, every State had registration requirements for sex offenders. These circumstances do not permit us to conclude that Shenandoah's due process rights, based on lack of notice, were violated. *See May*, 535 F.3d 912, 921 (8th Cir. 2008) (holding that notice of the duty to register under state law provides notice of the duty to register under SORNA); *United States v. Hinckley*, 550 F.3d 926, 938-39 (10th Cir. 2008) (same).

We can find no reason to hold that SORNA's notice provision was intended to dilute the effect of state notice requirements. We conclude that Shenandoah had notice of his registration obligations based on the information provided him in the New York registration forms, even if that notice did not explain that a consequence of failing to register would be a violation of federal law and  state law.

IV.

Shenandoah also brings several other broader Constitutional challenges to SORNA.  He argues that the statute violates the Commerce Clause and the Tenth Amendment of the Constitution.   He also argues that SORNA violates his constitutional right to interstate travel.

A.   Commerce Clause

-16-

Shenandoah contends that Congress exceeded its commerce clause authority when it passed SORNA because the statute, he argues, contains neither a sufficient nexus to commerce, nor a substantial effect on interstate commerce. Although we have not had occasion to address this issue, we now join the other courts of appeals that have done so, and hold SORNA to be a proper regulation under Congress' commerce power. *See, e.g., May*, 535 F.3d at 921-22; *United States v. Howell*, 552 F.3d 709, 713 (8th Cir. 2009); *Hinckley*, 550 F.3d at 939-40; *United States v. Lawrance*, 548 F.3d 1329, 1336-37 (10th Cir. 2008); *United States v. Ambert*, 561 F.3d 1202, 1210-11 (11th Cir. 2009).

Congress' commerce clause power is derived from Article I, section 8 of the United States Constitution, which provides that "[t]he Congress shall have Power ... [t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cls. 1 & 3. Congress may regulate intrastate activity so long as the means employed by Congress are "reasonably adapted" to the attainment of a legitimate end under the commerce power. *See United States v. Darby*, 312 U.S. 100, 121 (1941).

The Supreme Court in *United States v. Lopez*, 514 U.S. 549 (1995), synthesized and articulated the boundaries of this power. In *Lopez*, the Court addressed the constitutionality of the Gun-Free School Zones Act of 1990, 18 U.S.C. § 922(q), which prohibited possession of a firearm within a thousand feet of a school. The Supreme Court struck down the statute, identifying three categories of activity that Congress may regulate under its commerce power: (1) "Congress may regulate the use of the channels of interstate commerce;" (2) "Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities;" and

(3) "Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, i.e., those activities that substantially affect interstate commerce." *Id.* at 558-59 (internal citations omitted).

SORNA requires the government to prove that Shenandoah traveled in interstate or foreign commerce, and thereafter failed to register as required by SORNA. *See* 18 U.S.C. § 2250(a)(2)(B); *May*, 535 F.3d at 921. SORNA thus derives its authority from each prong of *Lopez*, and most specifically, the ability to regulate "persons or things in interstate commerce" and "the use of the channels of interstate commerce." Shenandoah was undeniably a "person ... in interstate commerce" in that he traveled and relocated between New York and Pennsylvania. Shenandoah did so via the "use of the channels of interstate commerce." It has been long established that Congress may forbid or punish use of interstate commerce "as an agency to promote immorality, dishonesty or the spread of any evil or harm to the people of other states from the state of origin." *May*, 535 F.3d at 922 citing *Brooks v. United States*, 267 U.S. 432, 436 (1925); *see also Gould*, 568 F.3d at 470. Congressional regulation of the channels of interstate commerce has also been upheld when the punishment "was intended to prevent the use of interstate commerce to facilitate ... forms of immorality." *Brooks*, 267 U.S. at 437 (citation omitted). SORNA contains a sufficient nexus to interstate commerce.

We conclude that SORNA is a proper regulation of commerce under the *Lopez* categories because it not only regulates persons or things in interstate commerce, but also regulates the use of channels of interstate commerce and the

-18-

instrumentalities of interstate commerce.[5]

B.       Tenth Amendment

Shenandoah argues that SORNA is unconstitutional because it compels New York law enforcement to accept registrations from federally-mandated sex offender programs in violation of the Tenth Amendment, which provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend X. We need not tarry long on this argument, because Shenandoah lacks standing to raise this issue. *See United States v. Hacker*, 565 F.3d 522, 525-26 (8th Cir. 2009). A "private party does not have standing to assert that the federal government is encroaching on state sovereignty in violation of the Tenth Amendment absent the involvement of a state or its instrumentalities." *Id.*; *see also Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 234-36 (2d Cir. 2006); *Medeiros v. Vincent*, 431 F.3d 25, 33-36 (1st Cir. 2005); *United States v. Parker*, 362 F.3d 1279, 1284 (10th Cir. 2004).

Here, just as in *Hacker*, Shenandoah is challenging SORNA in his individual capacity, and he does not assert the

_____

[5]       In so holding, we join those courts that have found SORNA to derive its authority under the various *Lopez* categories. *See, e.g., Gould*, 568 F.3d 459 (channels and instrumentalities); *Ambert*, 561 F.3d 1202 (channels and instrumentalities); *United States v. Hinckley*, 550 F.3d 926 (10th Cir.2008) (channels and instrumentalities); *May*, 535 F.3d 912 (8th Cir.2008) (channels and instrumentalities); *United States v. Dixon*, 551 F.3d 578 (7th Cir.2008) (Commerce Clause challenge rejected outright); *United States v. Lawrance*, 548 F.3d 1329 (10th Cir.2008) (channels and instrumentalities).

"involvement of a state or its instrumentalities." *Hacker, 565 F.3d* at 526. Shenandoah has not argued that his interests are aligned with any state's interest. Because Shenandoah is a private party, he lacks standing to raise a Tenth Amendment challenge to SORNA.

C.    Right to Travel

Shenandoah next argues that 18 U.S.C. § 2250(a) impermissibly infringes upon his constitutional right to travel because it punishes him for traveling to another state. He further argues that SORNA subjects sex offenders who travel to another state to a harsher penalty than sex offenders who remain in one state. Neither argument is persuasive.

"[T]he 'constitutional right to travel from one State to another' is firmly embedded in our jurisprudence." *Saenz v. Roe*, 526 U.S. 489 (1999) (quoting *United States v. Guest*, 383 U.S. 745, 757 (1966)). There are several constitutional bases for the right to travel, including general constitutional principles, *see, e.g., United States v. Guest*, 383 U.S. 745 (1966); the Privileges and Immunities Clause of Article IV, § 2 of the Constitution; *Hess v. Pawloski,* 274 U.S. 352 (1927); the Privileges or Immunities Clause of the Fourteenth Amendment, *Twining v. State of N.J.*, 211 U.S. 78 (1908); and the Due Process Clause of the Fifth Amendment; *State v. Barker,* 252 Kan. 949, 850 P.2d 885 (Kan.1993).

In *Saenz v. Roe*, the Supreme Court struck down a California law that limited welfare benefits for new residents. 526 U.S. 489 (1999). The Supreme Court held that the Constitution protects the rights of United States citizens to choose where they live and not be treated differently than long-term residents. *Id.* at 500. This right to travel "protects the right of a citizen of one State to enter and to leave another State,

the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State." *Id.* at 500.

Most right to travel cases, however, focus on the Constitutionality of a particular state statute that may treat a state's citizens in a preferred manner as compared to newly arrived migrants. *See e.g. Doe v. Pa. Bd. Probation and Parole*, 513 F.3d 95 (3d Cir. 2008). Here Shenandoah insists: "SORNA penalizes a distinct group of sex offenders for exercising their right to travel because they are then subject to federal prosecution for failing to register as a sex offender where individuals who do not travel interstate are not so penalized." This is true, but meaningless. Shenandoah may travel interstate, but when he does, must register in the new state, while a convicted sex offender who remains within a state need only remain properly registered therein. There is simply no Constitutional violation. Moreover, moving from one jurisdiction to another entails many registration requirements required by law which may cause some inconvenience, but which do not unduly infringe upon anyone's right to travel. The essential part of the charged crime in this matter is the failure to register; Shenandoah's right to travel is incidental to this obligation, and not constitutionally offended.

Finally, it is worth noting that the Constitutional right of interstate travel is not an absolute right, and the burden imposed upon Shenandoah is necessary to achieve a compelling interest. Sex offender registration requirements may be burdensome, and the consequences may interfere with a registrant's freedom. However, society, through its legislative processes, has decided again and again that it has a compelling and strong interest in preventing future sex crimes. We conclude that this interest

outweighs any burden imposed. *See also Ambert*, 561 F.3d at 1210 ("The requirement to update a registration under SORNA is undoubtedly burdensome; however, the government's interest in protecting others from future sexual offenses and preventing sex offenders from subverting the purpose of the statute is sufficiently weighty to overcome the burden. This statute does not violate Ambert's right to travel."). Any impediment on Shenandoah's travel does not reach the Constitutional threshold of his right to travel interstate.

V.

Shenandoah additionally argues that Congress' delegation of authority to the Attorney General under 42 U.S.C. § 16913(d) violates the nondelegation doctrine. He also maintains that the Attorney General's Interim Rule of February 28, 2007, violated the Administrative Procedures Act, 5 U.S.C. § 553, by failing to provide a public notice and comment period.

We do not reach these issues. The allegations contained in the indictment here do not establish a record of Shenandoah's failure to comply with the *initial* registration requirements discussed in 42 U.S.C. § 16913(b) & (d). Since Shenandoah was already a registered sex offender when SORNA was enacted, SORNA only required him to keep his registration current on and after July 27, 2006. To the extent that he argues that the passage of SORNA should be construed to mean that all registered sex offenders are once again required to initially register pursuant to § 16913(b) & (d), we disagree. Such a reading of the statute is not warranted by the statutory language or common sense. While subsections (b) and (d) when read together seem to contemplate the need for clarification as to "initial registrations" by persons convicted of qualifying sex offenses prior to July 27, 2006, that need for clarification applies to a limited class of persons who, for various reasons, did not

-22-

have a registration requirement prior to the passage of SORNA but nonetheless were subject to sex offender registration requirements after SORNA became law on July 27, 2006. Shenandoah does not fall within this class of persons.

The allegations in this case clearly pertain to Shenandoah's failure to keep his registration current and, as such, are covered by 42 U.S.C. § 16913(a) & (c). *See May*, 535 F.3d at 918-19. Under these subsections, Shenandoah was required to "keep [his] registration current, in each jurisdiction" in which he resided and "not later than 3 business days after each change of . . . residence . . . appear in person in at least 1 jurisdiction . . . and inform that jurisdiction of all changes in the information required . . . in the sex offender registry." 42 U.S.C. § 16913(a) & (c).

The regulations promulgated by the Attorney General pursuant to § 16913(d) do not apply here and we express no opinion on their validity. The manner in which these regulations were promulgated pursuant to the delegation contained in § 16913(d), is likewise irrelevant since we have concluded that the allegations against Shenandoah do not involve an "initial registration" pursuant to § 16913(b). *See May*, 535 F.3d at 916-19. Because Shenandoah had already initially registered as a sex offender under state law when SORNA was enacted, subsection (d) of Section 16913 did not apply to him. He was required to keep his registration current under subsections (a) and (c). He did not do so. Shenandoah was then charged under the congressionally-defined crime in 18 U.S.C. § 2250 and in particular for failing to update his registration. The Attorney General's interim rule as to initial registrations simply does not apply. Shenandoah, therefore, does not have standing to challenge the rule or the manner in which it was promulgated.

VI.

-23-

The judgment of the District Court will be affirmed.