NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-1943
_____

ANGEL LUIS THOMAS, SR.;
NORMAN E. GREGORY; GLENN MORRIS,
                                         Appellants

v.

COL. TYREE C. BLOCKER; SGT. O.E. ROWLES;
CAPT. MAURICE A. TOMLINSON; TPR. DAVID HOWANITZ; KEVIN
KAUFFMAN; C.O. BRIAN HARRIS; NICOLE PITTMAN; JAMEY LUTHER;
BRIAN URBAN; MICHELE JAMES; JAMES RIEVEL; KIM HAWN;
PHILLIP CHAMBERLAIN; ADAM ROSS

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 4-18-cv-00812)
District Judge: Honorable Matthew W. Brann

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1
on February 10, 2022

Before: GREENAWAY, JR., SCIRICA, and RENDELL, *Circuit Judges.*

(Filed: July 21, 2022)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

In this 42 U.S.C. § 1983 action, Angel Luis Thomas, Sr., Norman E. Gregory, and Glenn Morris appeal the District Court's grant of Defendants' motion for judgment on the pleadings. Fed. R. Civ. P. 12. Appellants contend they were exempt from registering under the federal Sex Offender Registration and Notification Act (SORNA), 34 U.S.C. §§ 20911–32, and allege Defendants, employees of the Pennsylvania State Police and Pennsylvania Department of Corrections, violated their Constitutional rights by forcing them to register as sex offenders in Pennsylvania. We previously rejected many of Appellants' arguments in *Thomas v. Blocker*, 799 F. App'x 131 (3d Cir. 2020). We will affirm.

I.

Appellants were each convicted in Pennsylvania state court of rape and other sex-related crimes between 1983 and 1994. Appellants remained incarcerated from the time of their convictions until their release in 2018.

While Appellants were incarcerated, both Congress and the Pennsylvania General Assembly enacted sexual offender registration laws (federal and Pennsylvania SORNA). The Pennsylvania General Assembly passed its first sexual offender registration statute, commonly known as "Megan's Law I," in 1995. A few years later, the Pennsylvania Supreme Court struck down the sexually violent predator provisions of Megan's Law I, finding these provisions violated the Fourteenth Amendment. *Commonwealth v. Williams*, 733 A.2d 593, 608 (Pa. 1999). In 2000, the General Assembly enacted

2

Megan's Law II, which applied the registration requirement retroactively to sex offenders who committed rape and other sex-related crimes prior to the enactment of Megan's Law I. In 2004 and 2012, Pennsylvania passed two other versions of Megan's Law.[1] In 2017, the Pennsylvania Supreme Court struck down the statute's retroactive application because it violated Pennsylvania's *ex post facto* clause.[2] *Commonwealth v. Muniz*, 164 A.3d 1189, 1223 (Pa. 2017).

In response to *Muniz*, the Pennsylvania General Assembly passed Act 10 of 2018 (H.B. 631) and Act 29 of 2018 (H.B. 1952) (collectively "Act 29"). Act 29 once again made Pennsylvania SORNA retroactively applicable by applying it to individuals who were (1) "convicted of a sexually violent offense committed on or after April 22, 1996, but before December 20, 2012," or (2) "required to register with the Pennsylvania State Police under a former sexual offender registration law of this Commonwealth on or after April 22, 1996, but before December 20, 2012, whose period of registration has not yet expired." 42 Pa. Stat. and Cons. Stat. Ann. § 9799.52 (West 2022). In *Commonwealth v. Lacombe*, the Pennsylvania Supreme Court held the registration requirement was not punitive and therefore did not violate the *ex post facto* clause. 234 A.3d 602, 626–27 (Pa. 2020).

---

[1] The 2012 version, which brought Pennsylvania into compliance with federal SORNA, passed in 2011 but did not take effect until 2012.

[2] The Pennsylvania Supreme Court previously struck down Megan Law II's penalty provisions for being punitive, *Commonwealth v. Williams (Williams II)*, 832 A.2d 962, 985 (Pa. 2003), and the later 2004 version for violating the "single subject rule" of the Pennsylvania Constitution. *Commonwealth v. Neiman*, 84 A.3d 603, 615–16 (Pa. 2013).

In 2006, Congress enacted the Sex Offender Registration and Notification Act (SORNA). Federal SORNA "was enacted to close the loopholes in previous sex offender registration legislation," "to standardize registration across the states," *United States v. Shenandoah*, 595 F.3d 151, 154 (3d Cir. 2010), *abrogated on other grounds by Reynolds v. United States*, 565 U.S. 432 (2012), and "to address the deficiencies in prior law that had enabled sex offenders to slip through the cracks." *Carr v. United States*, 560 U.S. 438, 455 (2010). Federal SORNA defines a sex offender as an "individual who was convicted of a sex offense," 34 U.S.C. § 20911(1), which generally includes any "criminal offense that has an element involving a sexual act or sexual contact with another." *Id.* § 20911(5)(A)(i). There is no dispute that Appellants meet federal SORNA's definition of a sex offender. Federal SORNA requires a sex offender to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." *Id.* § 20913(a); *see also United States v. Pendleton*, 636 F.3d 78, 82–83 (3d Cir. 2011). In exchange for funding, federal SORNA requires states to maintain sex-offender registries and to provide a criminal penalty for sex offenders who fail to comply with federal SORNA's requirements. 34 U.S.C. §§ 20912, 20924, 20927. In 2011, the United States Attorney General, acting pursuant to Congressional authority, applied federal SORNA's registration requirements to all pre-SORNA offenders, including Appellants. *United States v. Cooper*, 750 F.3d 263, 266 (3d Cir. 2014).

Before Appellants were released from prison, Defendants informed Appellants that they must register as sex offenders on Pennsylvania's registry. Appellants were then

4

placed on the registry.[3]  Appellant Thomas subsequently brought a 42 U.S.C. § 1983 action in the District Court for the Middle District of Pennsylvania, alleging violations of his Constitutional rights under the First Amendment, Fourteenth Amendment, and *ex post facto* clause.[4]  Thomas further sought a temporary restraining order, seeking to have his name removed from the sex-offender registry.  The Magistrate Judge issued a Report and Recommendation recommending the District Court deny the motion for a preliminary injunction.  The Magistrate Judge reasoned that even if Thomas was not required to register under Pennsylvania SORNA, he was still required to register under federal SORNA.  The District Court adopted the Report and Recommendation in its entirety and denied injunctive relief.

Thomas filed an interlocutory appeal and we affirmed.  *See Thomas v. Blocker*, 799 F. App'x 131 (3d Cir. 2020) ("*Thomas I*").  In rejecting all of Thomas's arguments, we held: (1) federal SORNA applies to individuals, not just states; (2) federal SORNA applies even to individuals who do not travel interstate; (3) the obligation to register under federal SORNA is independent of state law; and (4) federal SORNA does not violate the Tenth Amendment anti-commandeering principle.  *Id.*  The Supreme Court

---

[3] Thomas joined the registry on December 27, 2017, in between the Pennsylvania Supreme Court's invalidation of the retroactive application in *Muniz* and the 2018 enactment of Act 29.  Thomas was temporarily removed from the list after the United States Supreme Court denied certiorari in *Muniz* and was only re-added after Act 29 was implemented.

[4] Thomas amended his complaint to join Gregory and Morris as plaintiffs and to add additional defendants.  The operative pleading in this case is Appellants' Second Amended Complaint, which was filed on January 24, 2019.

denied Thomas's petition for a writ of certiorari. *Thomas I*, 799 F. App'x 131 (3d Cir. 2020), *cert. denied*, 141 S. Ct. 164 (2020).

Defendants then moved for judgment on the pleadings, which the District Court granted. Appellants now appeal the District Court's decision and contend: (1) federal SORNA does not authorize state agents to compel an individual to register as a sex offender when such individual is exempt from registering under his or her state's statute; (2) federal SORNA is directed towards states, not individuals, so Appellants had no federal duty to register; (3) if federal SORNA is directed at individuals, it is limited to individuals who cross state borders and, accordingly, does not apply to Appellants; (4) the court erred in finding Appellants were not denied due process when they were not given an opportunity to show they were exempt from registering under the Pennsylvania statute; and (5) the court erred in finding Defendants would be entitled to qualified immunity.

## II.[5]

We exercise plenary review over a motion for judgment on the pleadings. *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 219–20 (3d Cir. 2005). But in *Thomas I*, a prior panel rejected Appellants' claims that (1) they cannot be compelled by state officials to comply with federal SORNA; (2) federal SORNA's registration requirement applies to states and not individuals; and (3) federal SORNA does not apply to state offenders who

---

[5] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343. We have jurisdiction under 28 U.S.C. § 1291.

do not travel interstate. 799 F. App'x at 133–35. Accordingly, the law of the case doctrine applies to these issues.[6]

III.[7]

On appeal, Appellants contend they were not required to register under federal SORNA, they were denied due process because they were not given the opportunity to prove they were exempt from registration under Pennsylvania's SORNA, and Defendants were not entitled to qualified immunity.[8] We will reject each of these arguments.

---

[6] "The law of the case doctrine 'limits relitigation of an issue once it has been decided' in an earlier stage of the same litigation." *Hamilton v. Leavy*, 322 F.3d 776, 786 (3d Cir. 2003) (quoting *In re Cont'l Airlines, Inc.*, 279 F.3d 226, 232 (3d Cir. 2002)). Under this doctrine, we can reconsider previously decided issues when one of three "extraordinary" exceptions apply: when "(1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *Pub. Interest Rsch. Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116–17 (3d Cir. 1997). Appellants do not contend new evidence is available, nor that a supervening new law has been announced. They only substantively address the prior panel's decision by criticizing the panel for "unfortunately approv[ing] the same truncation of binding precedent" as the District Court. Appellants' Br. 10. Accordingly, Appellants' claim is best characterized as arguing the "earlier decision was clearly erroneous and would create manifest injustice." *Pub. Interest Rsch. Grp. Of N.J., Inc.*, 123 F.3d at 117. The burden accompanying Appellants' contention is heavy. *See Ass'n of N.J. Rifle & Pistol Clubs Inc. v. Att'y Gen. N.J.*, 974 F.3d 237, 247 (3d Cir. 2020). A decision is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 320 (3d Cir. 2020) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "Similarly, a manifest injustice occurs only when there is direct, obvious, and observable error." *Ass'n of N.J. Rifle & Pistol Clubs Inc.*, 974 F.3d at 247 (quotation and citation omitted).

[7] By failing to discuss their defamation and invasion of privacy claims in their opening brief, Appellants waived those issues. *See United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal.").

[8] Appellants further allege violations of the *ex post facto* clause. Their *ex post facto* claim fails because we have already held that federal SORNA, and specifically the

7

A.

Appellants advance three arguments to persuade us they were not required to register under federal SORNA: (1) federal SORNA does not authorize state agents to compel an individual to register as a sex offender when he is exempted from registering under the state's statute; (2) federal SORNA is directed towards states, not individuals; (3) if federal SORNA is directed at individuals, it does not apply to state offenders who do not cross state borders. None of their arguments is convincing, for the reasons set forth in *Thomas I*, 799 F. App'x 131, and reiterated below. We would reject each of these arguments even if we exercised plenary review.

First, Appellants argue that because they are exempt under Pennsylvania's registration regime, state officials may not compel them to register under federal SORNA. But as the *Thomas I* panel correctly concluded, Appellants' federal duty to register under § 20913(a) is independent of Pennsylvania law. In *United States v. Pendleton*, we held a sex offender's "federal duty to register under SORNA was not dependent upon his duty to register under [state] law." 636 F.3d 78, 86 (3d Cir. 2011). Accordingly, even if Appellants are correct that they are exempt from registering under Pennsylvania law, Appellants are still required to register under federal SORNA.

In the alternative, Appellants suggest that if state officials are required to register individuals under federal SORNA, the statute would violate Tenth Amendment anticommandeering principles. Appellants are correct that "Congress cannot compel

retroactive registration requirement, does not violate the *ex post facto* clause. *Shenandoah*, 595 F.3d at 158–59.

Pennsylvania's legislature or its employees to implement federal directives." Appellants' Br. 15. But a statute that was properly enacted pursuant to the Commerce Clause and Congress's spending power, and with which a state voluntarily complies, does not violate Tenth Amendment anticommandeering principles. *New York v. United States*, 505 U.S. 144, 173 (1992). Federal SORNA falls within this category. *See, e.g.*, *United States v. Kebodeaux*, 570 U.S. 387, 391 (2013) ("SORNA . . . used the federal spending power to encourage States to adopt sex offender registration laws."); *see also United States v. Brown*, 740 F.3d 145, 148 n.6 (3d Cir. 2014); *Pendleton*, 636 F.3d at 86; *Shenandoah*, 595 F.3d at 160. In exchange for federal funding, Pennsylvania willingly chose to comply with federal SORNA. Accordingly, Appellants' Tenth Amendment argument "rings hollow." *Thomas I*, 799 F. App'x at 135 n.3.

Second, Appellants claim federal SORNA instructs states to incorporate SORNA's requirements into their own legislation but does not impose obligations on individuals. Appellants are incorrect, for the reasons expressed by the *Thomas I* panel. "Federal SORNA states that 'a *sex offender* shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student.'" *Thomas I,* 799 F. App'x at 133 (emphasis added) (quoting 34 U.S.C. § 20913(a)). Accordingly, the directive "applies to sex offenders – not to states," and "an independent . . . duty is placed on sex offenders." *Shenandoah*, 595 F.3d at 157. Appellants contend that because federal SORNA directs states to collect information, ensure a sex offender's registration, and provide penalties for a sex offender's failure to register, federal SORNA is directed towards states. But a sex offender's obligation to

9

register is separate from a state's obligation to comply with federal SORNA. Appellants ignore the explicit language in *Shenandoah* that a state's "failure to implement [SORNA] does not give sex offenders a reason to disregard their federal obligation to update their state registrations." 595 F.3d at 157. Our precedent thus forecloses Appellants' argument.

Third, Appellants argue federal SORNA does not apply to them because they have not traveled outside Pennsylvania, nor do they plan to travel outside the state. Appellants are incorrect, because, as the *Thomas I* panel properly concluded, federal SORNA applies to all sex offenders, even those who do not travel interstate. 799 F. App'x at 134. In *Pendleton*, we specifically considered whether federal SORNA's registration requirement was "beyond the bounds of the Commerce Clause because it requires registration from all sex offenders, not just those who travel in interstate commerce." 636 F.3d at 86. We then upheld this requirement under the Commerce Clause and the Necessary and Proper Clause. *Id.* at 87–88. *Pendleton* compels us to find the registration requirement applies to all individuals, not just those who travel interstate.

Appellants' reliance on *Carr v. United States* is misguided and does not convince us to deviate from *Pendleton* and other Third Circuit precedent. Appellants encourage us to find *Carr* "plainly stands for the principle that [federal] SORNA does not apply to an offender who remains within his home state." Appellants' Br. 32. Appellants' argument fails because the registration requirement in 34 U.S.C. § 20913 is distinct from the enforcement provision in 18 U.S.C. § 2250. The registration requirement in § 20913(a) provides that a "sex offender shall register, and keep the registration current, in each

10

jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." On the other hand, the enforcement provision, § 2250(a), states that any individual who: (1) is required to register under SORNA; (2) travels in interstate commerce; (3) and "knowingly fails to register or update a registration as required" by SORNA, "shall be fined . . . or imprisoned not more than 10 years, or both."

In *Carr*, the Supreme Court held that a sex offender who has not traveled interstate may not be prosecuted under § 2250 because such a prosecution would result in "an illogical result given the absence of any obvious federal interest in punishing such state offenders." 560 U.S. at 446. Appellants take this quote to mean "SORNA does not apply to an offender who remains within his home state" because there is no federal interest at stake. Appellants' Br. 32. But in *Pendleton*, we concluded the federal interest is still furthered even when § 20913 regulates solely intrastate activity. 636 F.3d at 87. And *Carr* itself acknowledged that § 20913 and § 2250 are two distinct steps: "Once a person becomes subject to SORNA's registration requirements . . . that person can be convicted under § 2250 if he *thereafter* travels and then fails to register." 560 U.S. at 447 (emphasis added). Accordingly, just because an individual has not violated § 2250 does not mean he need not register under § 20913(a).[9] We reiterate here that "federal SORNA's registration requirement applies to all sex offenders—even those who do not

---

[9] Appellants further cite to *Shenandoah* in support of their position. But Appellants misread the plain language of *Shenandoah* and once again fail to recognize the court's distinction between a duty to register, which is placed on all sex offenders, and the federal enforcement of said duty, which only applies in interstate commerce. Accordingly, we do not find Appellants' argument convincing.

travel in interstate commerce." *Thomas I*, 799 F. App'x at 134. The fact that Appellants have neither left Pennsylvania nor have plans to leave Pennsylvania does not absolve them from registering under federal SORNA.

B.

Appellants next contend the trial judge erred in not giving them the opportunity to prove they were exempt from registering under Pennsylvania's SORNA. The District Court properly concluded Appellants were already provided with due process by the trial courts that convicted them of their crimes. In *Connecticut Department of Public Safety v. Doe*, the Supreme Court considered whether Connecticut's version of Megan's Law deprived the petitioner of his liberty interest "without notice or a meaningful opportunity to be heard." 538 U.S. 1, 6 (2003). The petitioner in *Doe* requested a due process hearing to prove he was not currently dangerous. *Id.* The Court denied his request because "due process does not entitle him to a hearing to establish a fact that is not material under the Connecticut statute." *Id.* at 7. And because "the law's requirements turn on an offender's conviction alone—a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest," his claim failed. *Id.*

Appellants attempt to distinguish Pennsylvania's law from Connecticut's law by claiming Connecticut's statute applied to *all* individuals convicted of sex offenses while Pennsylvania's statute exempts those whose crimes occurred prior to 1996. Appellants contend that because Pennsylvania's SORNA exempts individuals whose crimes occurred prior to 1996, the date of their crime is a relevant fact, and *Doe* is inapplicable. The text of *Doe* forecloses this argument. As the District Court noted, the language in

12

*Doe* is broad, and on its face, plainly holds a due process claim will fail where, as here, the "law's requirements turn on an offender's conviction alone—a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest." *Doe*, 538 U.S. at 7. There is no factual dispute as to whether Appellants were convicted, and, accordingly, whether federal SORNA applies to them.[10] For this reason, Appellants are not entitled to a further hearing.

C.

Irrespective of the merits of Appellants' claims, Defendants are entitled to qualified immunity. State officials are granted immunity for civil damages if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For a right to be clearly established it "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right" at the time the action was taken. *Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987). Such an understanding is not sufficiently clear unless "existing precedent [has] placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

---

[10] Two of our sister courts have rejected claims similar to Appellants' claims. *See Murphy v. Rychlowski*, 868 F.3d 561, 566–67 (7th Cir. 2017) ("Nor do we find compelling Murphy's argument that his California registration status is a *fact* relevant to the Wisconsin statute. Because Murphy's registration status in California was established after a procedurally safeguarded proceeding (the criminal proceedings), we hold that he was not entitled to pre-registration process pursuant to the Supreme Court's holding in *Connecticut Department of Public Safety*."); *A.C.L.U. of Nev. v. Masto*, 670 F.3d 1046, 1059 (9th Cir. 2012) ("The Due Process Clause does not entitle an individual to a hearing unless there is some factual dispute that a hearing could serve to resolve." (internal quotation omitted)).

13

No precedent places the constitutional question beyond debate. Appellants rely solely on the Pennsylvania Supreme Court's decision in *Muniz*, which struck down the statute's retroactive application as a violation of Pennsylvania's *ex post facto* clause.

But at the time Appellants were first placed on the registration list, an appeal from *Muniz* was pending before the United States Supreme Court. And once the Supreme Court denied the petition for certiorari, Appellants were temporarily removed from the list until the enactment of Act 29.

Moreover, Appellants contend the "five federal judges" who held federal SORNA required Appellants to register "all rel[ied] on the same mistaken tacit assumption . . . that federal SORNA obliges or empowers state employees to force registration upon unwilling individuals."[11] Appellants' Br. 43. As discussed, the previous judges did not err. *See supra* Section III.A. But even if the judges had erred, their joint error proves it would not be sufficiently clear to a reasonable official that registering Appellants violated their constitutional rights. Accordingly, irrespective of the merits of Appellants' claims, Defendants would be entitled to qualified immunity.

## IV.

For the foregoing reasons, we will affirm the judgment on the pleadings.

---

[11] These judges include the magistrate judge, the trial judge, and the three circuit judges who comprised the *Thomas I* panel.